UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CRIMINAL ACTION NO. 6:11-61 |
| | § | |
| GERARD BRIAN EVANS, | § | |
| Defendant. | § | |

**MEMORANDUM OPINION & ORDER**

Defendant Gerard Evans ("Evans") is charged with possession with intent to distribute 1.23 kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(D) and possession of ammunition after having been previously convicted of a felony in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2). Now pending before the Court is Evans' Motion to Suppress (Dkt. No. 42). An evidentiary hearing on Evans' motion was held on July 17, 2013, after which Evans and the United States of America ("the Government") filed supplemental briefing (Dkt. Nos. 65 & 69, respectively).

**I.     Background**

On June 1, 2011, Officer Shane Wallace with the Victoria Police Department (VPD) witnessed a hand-to-hand delivery of narcotics in front of 610 Antietam Drive, Victoria, Texas (hereinafter "610 Antietam") by a light-skinned black male to a woman in a Chevy Tahoe. The same officer had previously been notified by neighbors over the course of several months that the resident at 610 Antietam had been selling drugs. Officer Wallace contacted the driver of the Tahoe, who admitted that she had purchased marijuana from the male earlier that day and on three prior occasions. The following day, VPD received an anonymous phone call about drug activity at a white house on the 600 block of Antietam.

1

VPD then began an investigation of the unidentified male, consisting of several uneventful surveillances of the residence at 610 Antietam on June 2, 20, and 24, 2012. While no illegal activity was observed at the residence, on June 20 and 24, officers did observe a silver Nissan Altima driven by a light-skinned black male come and go from the house several times.

After an hour of surveillance without incident on the afternoon of June 24, Sergeant Caleb Breshears, the surveilling officer, left 610 Antietam to conduct surveillance at Regency Apartments, a high-crime area nearby. There, Sergeant Breshears observed the same silver Altima he had just witnessed parked at 610 Antietam pull into the parking lot at Regency Apartments and remain there for 30 to 40 minutes. Officer Aaron Moeller, who was observing the Altima from another angle, testified that he believed he witnessed several hand-to-hand drug transactions take place between the car's driver and people coming from the apartment complex parking lot.

When the Altima left Regency Apartments, the driver failed to signal its turn and was stopped by police officers. The driver—a light-skinned black male identified as Evans—refused consent to search the vehicle but consented to a search of his person, which turned up nothing. The passenger of the vehicle consented to a search of her purse, which resulted in the discovery of a small amount of marijuana. Officers then conducted a probable cause search of the rest of the vehicle, which uncovered 149 grams of marijuana. Officers also detected the pungent odor of fresh marijuana emanating from the vehicle's empty trunk. Evans and his passenger were then arrested and taken to the Victoria County Jail.

Following the traffic stop and vehicle search, Sergeant Breshears, VPD Officer Jason Martin, and K-9 handler Kelly Gibbs proceeded to 610 Antietam to conduct a knock-and-talk. Once there, one officer knocked on the door while Officer Gibbs allowed her drug dog to sniff

the area near the front door of the home. After the dog alerted that narcotics were present in the home, Officer Gibbs and the dog left. Sergeant Breshears also left to get a search warrant, which was based on evidence from the dog sniff, the traffic stop, surveillance at Regency Apartments earlier that day, the anonymous phone tip on June 2, information from the drug buyer on June 1, and complaints from neighbors during the months leading up to Evans' arrest that day. Officer Martin, later joined by Officer Moeller, stayed to secure the premises, essentially preventing anyone from entering or exiting the house.

Hours later, Travis Williams, mother of Evans and owner of 610 Antietam, pulled into the driveway. She was greeted by police officers dressed in plain clothes who told her that her son had been arrested and that a search warrant to search the home was being obtained. Despite this, officers asked Ms. Williams for her permission to search the home for drugs. Ms. Williams asked to first make a phone call before providing an answer. Roughly 20 minutes later, Ms. Williams' pastor and cousin arrived and advised Ms. Williams to give the police permission to search her home. Ms. Williams subsequently gave the officers consent to search her home and told officers where Evans' bedroom was located. Although Ms. Williams consented, officers waited to search the home until Sergeant Breshears returned with the warrant. Upon searching Evans's bedroom, officers found 1.23 kilograms of marijuana inside a duffle bag in a closet and 9 rounds of pistol ammunition in an unlocked safe underneath a recliner.

Evans now moves to suppress evidence of the marijuana and ammunition as the fruit of an illegal search. According to Evans, because Officer Kelly's use of the drug dog violated his Fourth Amendment rights, both the warrant and his mother's consent to search are invalid, and all evidence obtained as a result must be suppressed.

## II. Analysis

### A. Warrant

Evans first argues that the dog sniff outside his home was an illegal search under *Florida v. Jardines*, 133 S.Ct. 1409 (Mar. 26, 2013), and, excluding the dog's alert, there was insufficient probable cause for the issuance of a search warrant because the remaining evidence was stale.

The Supreme Court recently held that a dog sniff outside a home is considered a search under the Fourth Amendment. *Jardines*, 133 S. Ct. at 1417-18. In *Jardines*, the Court concluded that the warrant to search the defendant's home was invalid because it depended solely on the drug dog's alert during a sniff search conducted in violation of the Fourth Amendment. *Id.* The Fifth Circuit has since held that if a warrant is supported by sufficient probable cause beyond a sniff search that was included in showing probable cause, the *Jardines* holding is not implicated, and the warrant remains valid. *United States v. Nagy*, No. 12-50289, 2013 WL 1896296, *1 (5th Cir. May 7, 2013).

Here, as in *Nagy*, additional probable cause beyond the dog's alert was used in obtaining a warrant to search 610 Antietam, including VPD's June 24, 2012 surveillance of Evans at Regency Apartments, seizure of marijuana from Evans' car, and detection of an overwhelming scent of marijuana coming from the empty trunk of Evans' Altima, which had been parked in front of 610 Antietam in the hours prior to Evans' arrest. The warrant also relied on the June 2, 2012 anonymous phone tip, information from the woman who purchased drugs from Evans on June 1, 2012 and three other occasions, and complaints from neighbors over the course of several months that someone was dealing drugs on Evans' block. Officer Breshears testified that he would have sought a warrant even in the absence of the dog's alert, although he would have had to consult with the District Attorney beforehand under that office's policies.

Evans argues that the June 2 anonymous phone tip, June 1 statement from the woman claiming to have purchased drugs from him on four occasions, and complaints from neighbors during the months leading up to his arrest had become stale by June 24 and were therefore inadmissible for use as probable cause in obtaining the warrant.

Rules governing staleness in the Fifth Circuit provide that, as long as information reaching back over long periods of time clearly shows a long-standing, ongoing pattern of criminal activity, and the type of evidence sought is reasonably expected to be kept for long periods of time in the place to be searched, staleness does not eliminate the use of dated information in obtaining a search warrant. *United States v. Alvarez*, 451 F.3d 320, 332 (5th Cir. 2006).

Here, the information in the affidavit in support of the warrant suggests a long-standing, ongoing pattern of criminal activity, namely the trafficking of illegal narcotics by Evans in and around 610 Antietam over a period of months. Although probable cause to find illegal narcotics themselves may become stale in a short period of time, *United States v. Stevens*, 439 F.3d 983, 988 (8th Cir. 2006), a number of the items identified in the warrant—paraphernalia used to manufacture, package, or consume illegal narcotics; currency or other valuables believed to be derived from the sale of illegal narcotics; books, records, and receipts related to the purchase or distribution of illegal narcotics; and telephone books, address books, or other papers reflecting contact information for associates in the manufacture, sale, and distribution of illegal narcotics— are the type of evidence that can reasonably be expected to be retained for long periods of time. *See Alvarez*, 451 F.3d at 332. As such, the June 2 anonymous phone tip, June 1 statement from the woman who purchased drugs from Evans on four occasions, and complaints from neighbors

during the months leading up to Evans' arrest were not stale as of June 24, 2012, and this information was properly included for use as probable cause in obtaining the warrant.

Excluding only the drug dog's alert, the Court finds that the remaining information in the affidavit in support of the warrant provides a reasonable ground for belief of Evans' particular guilt with regard to drug trafficking. Because there was probable cause to support a warrant to search the premises at 610 Antietam, the search did not violate Evans' rights under the Fourth Amendment.

### B.  Consent

Evans further argues that his mother's consent did not validate the search, as Ms. Williams' consent was ineffective with respect to Evans' belongings and was the result of the unconstitutional knock-and-talk and sniff search involving the dog. Although the Court has already concluded that the search was lawful because it was conducted pursuant to a valid warrant, erring on the side of caution, the Court will address Evans' arguments concerning his mother's consent below.

Evidence resulting from a consensual search is admissible if the consent furnished was valid. *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990). Consent to search is valid only when: (1) the consent is voluntarily given, (2) the search is within the scope of the consent given, and (3) the person giving consent had either apparent or actual authority to do so. *United States. v. Freeman*, 482 F.3d 829, 831-32 (5th Cir. 2007).

#### 1.  Voluntariness

Voluntariness is determined by the totality of the circumstances, which the Fifth Circuit outlines with six relevant, but not dispositive, factors: (1) consent provider's voluntariness of custodial status, (2) presence of coercive police procedures, (3) extent and level of consent

provider's cooperation with the police, (4) consent provider's awareness of the right to refuse consent, (5) consent provider's education and intelligence, and (6) consent provider's belief that no incriminating evidence will be found. *United States v. Jenkins*, 46 F.3d 447, 451 (5th Cir. 1995). While these factors were formulated and originally used for consent providers who are owners of the property being searched and/or seized, the factors have also been applied to third party consent providers. *Id*.

According to her hearing testimony, Ms. Williams was not in custody when she provided consent. She further testified that the police officers were polite and courteous, and although she was prohibited from entering her house, she never asked to enter the house and did not feel pressured to give consent. Ms. Williams cooperated with the police by both giving her consent and giving officers directions to Evans' bedroom. While Ms. Williams was not explicitly told that she did not have to consent, and her intelligence and belief that no incriminating evidence would be found were not discussed, considering the totality of the circumstances, the Court finds that the consent given was voluntary.

**2. Scope**

The scope of consent is determined by a standard of objective reasonableness. *United States v. McSween*, 53 F.3d 684, 687 (5th Cir. 1995). This means that the scope of the search is restricted to what a reasonable person would understand to be the bounds of the given consent. *United States v. Mendoza-Gonzalez*, 318 F.3d 663 (5th Cir. 2003). The consent provider may limit the scope of the search if he chooses to do so. *McSween*, 53 F.3d at 688. However, if the consent provider fails to limit the scope, searching officers will not be required to request permission before searching individual containers. *Freeman*, 482 F.3d at 833. The search scope

may also be limited by the stated object of the search (*e.g.*, a search for narcotics). *Mendoza-Gonzales*, 318 F.3d at 668.

Here, officers asked Ms. Williams for consent to search her home, with drugs being the stated object of the search. Not only did Ms. Williams fail to set any restrictions on the scope of the search, she also explicitly directed officers to Evans' bedroom. Given that the object of the search was made clear and that Ms. Williams imposed no limits on the search, officers were objectively reasonable in concluding that the scope of consent extended to the bedroom closet and unlocked safe.

### 3. Authority

The consent provider must also have the authority to provide consent for the search. *Freeman*, 482 F.3d at 831. Authority may be either actual or apparent. *Morales v. Boyd*, 304 Fed. App'x 315, 319 (5th Cir. 2008).

Actual authority requires the property owner and the third party to have common authority over the property; this type of authority stems from the mutual use of property by persons generally having joint access or control of the property. *United States v. Shelton*, 337 F.3d 529, 532 (5th Cir. 2003). If there is joint access or control over property and the property owner fails to limit a co-inhabitant's access to the property, the co-inhabitant's authority to consent extends to all items on the premises. *United States v. Richard*, 994 F.2d 244, 250 (5th Cir. 1993). The premise underlying actual authority supposes that, by allowing joint access or control of the property, co-inhabitants assume the risk that another co-inhabitant will permit a search of the area. *United States v. James*, 571 F.3d 707, 713-14 (7th Cir. 2009). Alternatively, apparent authority requires an officer to reasonably believe that the consent provider had authority to provide consent, even if it is later shown that he had no such authority. *Freeman*,

482 F.3d at 834. Officers are entitled to rely on representations made by consent providers in determining whether they believe a person has the requisite authority to consent. *Morales*, 304 Fed. App'x at 319.

The evidence adduced at the hearing showed that Ms. Williams owns the house at 610 Antietam and allowed her son to stay there without paying rent. Though Ms. Williams testified that she did not often go into Evans' bedroom, Evans did not limit her or prohibit her from doing so, giving her joint access to the room. Because Ms. Williams enjoyed joint access to Evans' bedroom, Evans impliedly assumed the risk that she would allow a search of the room, and her actual authority to consent extended to both the closet and unlocked safe. *See James*, 571 F.3d at 713-14 (holding that defendant's mother had actual authority to consent to the search of defendant son's safe, where defendant did not restrict his mother's access to the safe and thereby assumed the risk that his mother would consent to the safe's search/seizure). Alternatively, even if Ms. Williams did not have actual authority to consent to the search of her son's bedroom, because Ms. Williams told the officers that she owned the house and directed them to the bedroom, police were reasonable in believing that she had requisite authority to consent to a search of the entire house, including Evans' bedroom. *See Morales*, 304 Fed. App'x at 319 (holding that police reasonably believed a man had authority to consent to the search of a trailer after he told police he had unrestricted access to the defendant's trailer and he owned land trailer was on).

In sum, the Court finds that the consent to search was valid because it was voluntary, the search was within the scope of consent, and Ms. Williams had both actual and apparent authority to provide consent. Because there was valid consent to search the premises at 610 Antietam, the search did not violate Evans' rights under the Fourth Amendment.

### III.     Conclusion

For the reasons set forth above, the Court finds that both the search warrant and Ms. Williams' consent validated the June 24, 2012 search of the premises at 610 Antietam. Accordingly, Evans' Motion to Suppress (Dkt. No. 42) is **DENIED**.

It is so **ORDERED**.

**SIGNED** this 9th day of October, 2013.

_____
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE